PATRICK J. FARAGHER, Corporation Counsel Washington County
You request my opinion on whether the supervisors of a soil and water conservation district created pursuant to sec. 92.05, Stats., may formulate and propose an ordinance regulating agricultural uses on land currently used for agricultural purposes which lies within the district but outside of the limits of incorporated cities and villages.
Any county board of supervisors may declare its county to be a soil and water conservation district. Sec. 92.03 (1), Stats. Under sec. 92.09 (1), Stats., the supervisors of such districts are clearly authorized to formulate regulations and propose ordinances regulating the *Page 127 
use of district lands in the interest of conserving soil and water resources and controlling erosion, runoff and sedimentation:
 The supervisors of any soil and water conservation district may formulate proposed regulations for the use of lands lying within the district but outside of the limits of incorporated cities and villages, or for any parts of such lands, in the interest of conserving soil and water resources and controlling erosion, runoff and sedimentation . . . . [T]he supervisors may draft an ordinance embodying proposed land-use regulations and designating the area to which they shall apply, and recommend to the county board that it enact such ordinance.
Section 92.09 (5), Stats., specifies the types of land use regulations which may be adopted by ordinance of the county board. The supervisors' proposed ordinance regulating the agricultural use of land currently utilized for agricultural purposes must embody the types of regulatory activities authorized in sec. 92.09 (5), Stats. Likewise, as pointed out in sec. 92.09 (1), Stats., as far as practicable such regulations must be based on a comprehensive plan for the district. On the other hand, legislation may be limited to that phase of a problem which seems most acute, based on knowledge and experience with local conditions. State ex rel. Baer v. Milwaukee, 33 Wis.2d 624,634, 148 N.W.2d 21 (1967). Therefore, regulations which would only affect agricultural practices and uses on land utilized for agricultural purposes would not be necessarily invalid simply because so limited.
You next ask whether the supervisors of the district may restrict those persons eligible to vote in a referendum election to approve or reject such ordinance to "owners and operators" of lands used for agricultural purposes in the unincorporated portion of the county. The answer is no. The language of sec.92.09 (1), Stats., is clear and unambiguous on its face in this regard: "The county board may enact such ordinance provided a simple majority of the electors as defined in s. 6.02 residing in the area to be affected and who vote in the referendum thereby approve such ordinance in a referendum held within such area."
Although the Legislature may confer local legislative power only upon county boards under Wis. Const. art. IV, sec. 22, and cannot authorize the county board to delegate the board's legislative power *Page 128 
to the electorate, it is well established that a county board resolution or ordinance which a county can otherwise legally pass may be contingent upon the result of a referendum. See 62 Op. Att'y Gen. 14 (1973) and citations therein. See also sec. 59.025 (1) and (6), Stats. (1977). In this instance the electorate is specifically defined as anyone who qualifies as an elector under the general election laws, sec. 6.02, Stats., and the only limitation imposed by sec. 92.09 (1), Stats., is that which limits the vote to those electors "residing in the area to be affected."
While sec. 92.09, Stats., and ordinances or regulations adopted thereunder must be liberally construed, sec. 92.09 (2), Stats., I agree with your rejection of an interpretation of sec. 92.09 (1), Stats., proposed by the supervisors of the Washington County Soil and Water Conservation District, which would extend the vote to nonresident "owners and operators."
Prior to 1971, that portion of sec. 92.09 (1), Stats. (1969), which described who could vote, did provide in part as follows: "provided at least two-thirds of the land occupiers of the area to be affected thereby approve such ordinance." A "land occupier" was then, and is now, defined as a holder of title to land within the district. Sec. 92.03 (4), Stats. But ch. 323, Laws of 1971, amended sec. 92.09 (1), Stats. (1969), to state: "provided a simple majority of the electors as defined in s. 6.02 residing in the area to be affected and who vote in the referendum."
Therefore, the legislative history of sec. 92.09 (1), Stats., clearly demonstrates the Legislature's intention not to restrict voting to land owners but to extend the vote to all who are resident electors of the "area to be affected" by the ordinance. An attempt by the supervisors of the district to restrict the voting to land "owners and operators" would be contrary to the express provisions of the statute and inject ambiguity into a statute which is otherwise clear on its face.
The phrase "area to be affected," as used in sec. 92.09 (1), Stats., is not defined. You suggest that the "area to be affected" by the type of regulation you have described above would only include the specific properties directly subjected to the regulations, i.e., lands used for agricultural purposes in the unincorporated portion of the county, and that those eligible to vote in a referendum on the proposed ordinance would be limited to those residing on such land. I cannot agree. *Page 129 
It is evident under sec. 92.09 (1), Stats., that the Legislature intended that the lands to be regulated lie within a designated geographical area. In designating the area, the legislative body should identify an area having common characteristics which constitute a homogeneous whole within the scope of a comprehensive plan. It is not necessary to regulate all land within the designated area, but all regulated land must be within the designated area. Consequently, the county could regulate land within a designated area on the basis of use, such as that currently used for agricultural purposes.
The eligible voters, however, are those within the designated or affected area whether or not their lands are regulated.
The question whether the designated area can comprise only the regulated lands depends on all the facts and circumstances and does not admit of a definitive answer in this opinion. It is conceivable that in certain counties the designated area which has common characteristics and constitutes a homogeneous whole within the scope of a comprehensive plan also comprises only the regulated lands. In other counties, however, such designated area may also contain islands of lands not within the scope of the regulations, e.g., recreational land. The resident of such land is eligible to vote. The county can carve out such lands from the designated area only if in doing so there remains a homogeneous whole containing common characteristics within the scope of a comprehensive plan. To exempt such lands solely to deprive the residents of a voting right, however, would defeat legislative intent. In recognizing the need for regulation of lands or parts of lands within an area, the Legislature nevertheless recognized that the residents on unregulated lands within that area also have interests in the decision to impose regulations.
Unless there is a rational basis for distinguishing one part of the district from another, the "area to be affected" by any soil or water conservation regulation would include the entire district outside of the limits of incorporated cities and villages. Even if rational distinctions are found to exist, however, any elector residing within any district subdivision which is created would be entitled to vote in a referendum concerning regulations within that subdivision whether residing on the class of land sought to be regulated or not.
BCL:JCM *Page 130